IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARELLE D. FOX,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BRANDY HAGENE, NURSE MARY ANN, JILIAN CRANE, WEXFORD HEALTH SOURCES, INC., ANTHONY WILLS, MARTHA OAKLEY, JENNIFER WEATHERFORD, MELISSA OGLE, JEANNE SAUERHAGE, ROBERT SCHREMP, and PHILLIP R. ERTHALL,<br><br>　　　　　Defendants. | Case No. 22-cv-299-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Darelle D. Fox, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correction Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Fox was allowed to proceed on three counts alleging deliberate indifference in the treatment he received for an injury to his hand.

This matter is before the Court on motions for summary judgment filed by Defendants Robert Schremp (Docs. 84, 85) and Phillip Erthall (Docs. 91, 92). Defendants argue that Fox failed to exhaust his administrative remedies against them. Fox filed a response in opposition to the motions (Doc. 102), and Defendants filed reply briefs (Docs. 103 and 104, respectively).

## FACTUAL BACKGROUND

On February 22, 2022, Fox filed his Complaint against multiple defendants alleging deliberate indifference in the treatment of his hand after arriving at Menard (Doc. 1). Specifically, Fox alleged that before he entered IDOC custody, he had surgery on his left hand, and pins were placed during the procedure. Fox received instructions to have the pins removed after surgery. But, after arriving at Menard in 2019, he failed to receive any medical care for his hand, despite multiple requests for care from 2020 until the filing of his Complaint in early 2022 (Doc. 9, p. 2).

Fox saw an outside specialist about his hand on January 29, 2022. The John Doe Doctor acknowledged that the pins should already have been removed, but instead of removing them, the specialist sent Fox back to Menard without treatment (*Id*.). After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Fox was allowed to proceed against several named defendants and the John Doe Doctor (*Id*. at pp. 3-4).

Fox was granted leave to amend his complaint in June 2022 (Docs. 19, 21, 23). In addition to his original claims, Fox added additional defendants to his deliberate indifference claim, as well as a claim against Wexford Health Sources, Inc. (Doc. 21, p. 4). One of the additional defendants included a John Doe physical therapist who Fox alleged he received care from on March 24, 2022 (Doc. 21, p. 3). Despite being referred to the physical therapist for care, the John Doe physical therapist told Fox that he could not provide him with care because Fox's hand was still swollen and the pins were still in his hand (*Id*.). He sent Fox back to his cell with no treatment.

Following the filing of his Amended Complaint, Fox was allowed to proceed on

the following claims:

> Count 1: Eighth Amendment deliberate indifference claim against Brandy Haggie, Nurse Mary Ann, Jill Crane, Jeanne Sauerhage, Martha Oakley, Jennifer Weatherford, Melissa Ogle, and John Doe physical therapist for failing to obtain Fox medical care for his injured hand.
>
> Count 2: Eighth Amendment deliberate indifference claim against John Doe Doctor for failing to remove the surgical pins from Fox's hand.
>
> Count 3: Eighth Amendment deliberate indifference claim against Wexford for having a custom, habit, or practice of denying services and treatment in order to save money.

(Doc. 21, p. 4).

Fox later identified the John Doe physical therapist as Defendant Robert Schremp (Docs. 61, 63) and the John Doe Doctor as Phillip Erthall (Docs. 71, 72).

Subsequently, Defendants Schremp and Erthall filed motions for summary judgment arguing that Fox failed to exhaust his administrative remedies prior to filing suit. Defendants argue that Fox failed to identify them in any grievance. Fox points to two grievances that he argues exhausted his claims against Schremp and Erthall.[1]

---

[1] Fox filed numerous grievances about the treatment of his hand while at Menard. But a number of those grievances failed to identify Schremp and Erthall—or were filed before Fox was seen by the treaters—and thus could not serve to exhaust Fox's claims. For instance, Fox filed a grievance about his hand on November 10, 2021, but he had not yet seen Schremp or Erthall at that time (Doc. 85-1, p. 35). Grievances dated January 31, 2022, February 20, 2022, and February 23, 2022, were filed before Fox saw Schremp for his physical therapy evaluation (*Id.* at pp. 21-26). Fox does not contend those grievances mention Erthall. Other grievances were not submitted until *after* Fox filed his Complaint and Amended Complaint in this case. Fox's June 9, 2022 grievance was submitted after his Amended Complaint and, in any event, did not mention Schremp and Erthall or the care they provided on the dates identified by Fox in his pleadings (*Id.* at p. 12).

**February 5, 2022 Grievance (Grievance No. 41-2-22)**

Fox first points to his grievance dated February 5, 2022, which was marked as an emergency and sought removal of the pins from his hand (Doc. 85-1, p. 18). His grievance alleged that on February 5, 2022, he saw Menard medical staff about the pins in his left hand but was told by medical staff that they could not doing anything, and he needed to wait until staff were able to see him (*Id.*). Fox noted the pins were sticking up under his skin, caused him intense pain, and had been in his hand since 2018 (*Id.* at pp. 18-19). He requested medical treatment for his hand, including the removal of the pins, and pain medication. He also sought transfer to either a "hand therapist" or a hospital for further care (*Id.* at p. 18).

The grievance was marked as an emergency by the Chief Administrative Officer ("CAO") (*Id.*). On February 9, 2022, the grievance officer reviewed the grievance (*Id.* at p. 16). The grievance was forwarded to the healthcare unit. On March 15, 2022, healthcare unit administrator Angela Crain noted that Fox had already been seen offsite at the Orthopedic Institute of Southern Illinois for an urgent evaluation and was waiting approval for surgery on his hand (*Id.*). Crain also noted that Fox was seen by staff multiple times in February 2022 and offered Ibuprofen but refused the medication. Multiple evaluations of his hand by staff found no symptoms of infection, pus, blood, or discoloration (*Id.* at pp. 16-17). The grievance officer deemed the grievance moot as Fox was awaiting surgery (*Id.*).

On March 22, 2022, the CAO concurred with the grievance officer's decision (*Id.* at p. 16). The Administrative Review Board ("ARB") received Fox's grievance on April 1,

2022 (*Id.*). The ARB reviewed both Fox's February 5, 2022 grievance and February 20, 2022 grievance together. The ARB denied the grievances, finding that the issues were appropriately addressed by the prison (*Id.* at p. 15).

**July 16, 2022 Grievance (Grievance No. 224-7-22)**

On July 16, 2022, Fox filed another emergency grievance regarding the treatment of his hand (Doc. 85-2, pp. 6-7). His grievance noted that he had surgery on his hand on July 13, 2022, and was discharged the following day (*Id.* at p. 6). Fox indicated that as of the date of his grievance he had not received any further treatment. Fox complained that he had been prescribed pain medication from both the outside doctor and Menard staff, but he had not received it. He also complained that he was supposed to receive cleaning supplies and wraps to protect the hand from infection, but he had not received either since returning to Menard (*Id.* at pp. 6-7). Fox requested treatment by Menard medical staff, pain medication, and cleaning materials for his wound (*Id.*).

On July 21, 2022, the CAO marked the grievance as an emergency. On August 10, 2022, the grievance officer noted that a memo from Angela Crain regarding Fox's current health status was obtained and the grievance officer found that Fox's issues were appropriately addressed by medical staff (*Id.* at p. 5). Crain noted Fox saw Nurse Practitioner Dearmond on July 14, 2022, and was prescribed Tylenol #3 for five days, as well as daily dressing changes (*Id.* at p. 8). Crain further noted that per medical records, Fox received his medication for five days (*Id.*). The grievance was deemed moot by the grievance officer. On August 10, 2022, the CAO concurred with the grievance officer's findings.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir.

2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Fox was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the

> names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the

appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material fact, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Simply put, Fox failed to exhaust his claims against Schremp and Erthall. Defendants Schremp and Erthall both argue that none of the grievance which Fox submitted about treatment for the surgical pins in his hand mentions them or exhausts the claims against them. Fox points to two grievances that he alleges exhausts his claims

against Erthall and maintains that his claims against Schremp were exhausted as well.

### A. Phillip Erthall

As to Defendant Erthall, Fox points to his February 5, 2022 grievance and argues that the fully exhausted grievance exhausted his claims against Erthall. But Fox did not include any allegations against Erthall or mention him by name or description in this grievance, and he does not even indicate in the grievance that he had been seen by an outside doctor (Doc. 85-1, pp. 18-19).

Although exhaustion is not intended to provide individual notice to each prison official who might later be sued, it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code §504.810(c). Although an inmate does not have to specifically identify the individual by name, he must include as much descriptive information as possible. *Id*.

Nothing in Fox's grievance indicates that he was complaining about care provided by Erthall. At the time Fox wrote the grievance, he had already seen Erthall but failed to mention his January 29, 2022 appointment or any care provided by Erthall in the

grievance. He does not mention seeing a specialist, only medical staff at the prison. In fact, in his request for relief he asks to be sent to a hand "therapist" or hospital. It appears Fox was referring to a hand specialist, but, in any event, the grievance does not indicate that he had already seen an outside specialist or that he took issue with the care the specialist provided.

Fox does not dispute that his grievance did not refer to an outside specialist. Instead, he argues that the response mentions that Fox was sent to the Orthopedic Institute for evaluation and grievance officials could have determined Fox's issues from the grievance. But nothing in the response indicates that grievance officials assumed Fox was also complaining about his treatment by outside providers. The response clearly indicates that medical staff at Menard saw Fox on numerous occasions and that staff were treating his medical concerns (*Id*. at pp. 16-17). Further, nothing in the grievance put officials on notice that Fox took issue with Erthall's evaluation, nor is there anything in the grievance that would have allowed grievance officials to infer a complaint about treatment by the outside specialist. Grievance officials were never given an opportunity to respond to any complaints regarding the care Erthall provided. Thus, the February grievance does not serve to exhaust the claims against Erthall.

Further, to the extent that Fox also points to his July 16, 2022 grievance, there are a number of issues with the grievance. First, it was not fully exhausted because Fox failed to appeal the grievance to the ARB. There is no indication in the record that it was appealed nor does Fox point to any evidence to suggest that it was fully exhausted. Further, the grievance was submitted *after* Fox filed his Complaint and Amended

Complaint. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). *See also Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020). The Seventh Circuit has stated that an inmate must exhaust his administrative remedies prior to filing suit, "a 'sue first, exhaust later' approach is not acceptable." *Chambers*, 956 F.3d at 984 (citing *Ford*, 362 F.3d at 398-400). Although exhaustion of new claims in an amended complaint may be completed after the filing of the original pleading but prior to the filing of the amended complaint, Fox had already filed his Amended Complaint prior to submitting his July 16, 2022 grievance. *Id.* (citing *Cannon v. Washington*, 418 F.3d 714, 717-19 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)). And his claim against Erthall was first raised in his original Complaint. *See Chambers*, 956 F.3d at 984-85 ("Chambers' claim against Dr. Sood is not new; it's the same claim he raised in his original *pro se* complaint, albeit against 'Unknown Doctor #1.'"). Finally, the grievance does not complain about any care provided by Erthall on January 29, 2022. Instead, the grievance discusses his July 2022 surgery and his post-surgical care. Nothing in the grievance would serve to exhaust the claims against Erthall in this case. Thus, Fox failed to exhaust his claims against Erthall.

### B. Phillip Schremp

Fox fails to point to any grievance that he filed regarding the claims against Schremp. Fox filed his February 5, 2022 grievance before he ever saw Schremp, so the grievance could not serve to exhaust claims against Schremp. Although Fox contends that he requested a hand therapist in his request for relief portion of the grievance, he had not yet seen Schremp. Fox fails to point to any other grievance filed after he saw Schremp on March 24, 2022 that includes complaints about the care Schremp provided. He argues

that Schremp is "listed within the exhausted grievance" but fails to identify the grievance he believes serves to exhaust the claim against Schremp. None of the grievances in the record includes allegations against Schremp or takes issue with the physical therapy Fox received at the prison. Thus, Fox failed to exhaust his claims against Schremp.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the summary judgment motions filed by Defendants Robert Schremp (Docs. 84, 85) and Phillip Erthall (Docs. 91, 92). The claims against Schremp and Erthall are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

DATED: August 10, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**